JOSEPH R. HURLEY

*v.*

ALLIED CHEMICAL CORPORATION

(No. CC910)

Decided February 5, 1980.

*Daniel F. Hedges, Robert S. Baker* for plaintiff.

*George E. Pickett, M.D., M. P. H. Director,* for Department of Health.

*Spilman, Thomas, Battle & Klostermeyer and Charles L. Woody and Cynthia L. Turco* for defendant.

MILLER, JUSTICE:

This case comes to us upon certified question from the Circuit Court of Fayette County. We are asked to decide: (1) whether the denial of employment in the private sector solely on the basis of the applicant having received mental health services contravenes W. Va. Code, 27-5-9(a), and gives rise to an implied private cause of action; and (2) whether such a denial frustrates the rehabilitative purposes of this statute, thus violating State public policy and giving rise to a cause of action under *Harless v. First National Bank,* ____ W.Va. ____, 246 S.E.2d 270 (1978). We answer the first question in the affirmative and the second in the negative.

For purposes of ruling upon the defendant's motion to dismiss under our case law,[1] the Circuit Court would have necessarily accepted as true the following factual allegations of the complaint.

In June of 1978, defendant Allied Chemical Corporation [hereinafter Allied] accepted a preliminary employ-

---

[1] *Harless v. First National Bank,* ____ W.Va. ____, 246 S.E.2d 270 (1978); *Chapman v. Kane Transfer Co.,* ____ W.Va. ____, 236 S.E.2d 207 (1977).

ment application for a coal miner position from plaintiff Joseph Hurley. Hurley passed the routine phases of a required physical examination, but Allied was notified by the physician that Hurley had informed him that he had taken medication for depression. Allied then notified Hurley that he had failed the physical examination and would be denied employment. Admitting that he had received services from a mental health facility, Hurley unsuccessfully attempted to persuade the personnel manager of Allied to offer him employment, and then filed this action for declaratory and injunctive relief and damages.

The Circuit Court granted Allied's motion to dismiss, but certified the case. Consequently, our only task is to determine whether the plaintiff's complaint states a cause of action. We do not determine the ultimate question of whether he will prevail. *See Harless v. First National Bank, supra,* ___ W.Va. ___, 246 S.E.2d at 272.

The plaintiff's contention that *Harless* creates a substantive cause of action is not well founded. In *Harless,* we dealt with what may be termed the retaliatory discharge rule, where an at will employee is fired because he has exercised some substantial public right which his employer has attempted to frustrate or avoid. An essential ingredient for the cause of action is an existing employment relationship between the parties. In the present case, Hurley did not occupy any employment status with Allied and, therefore, *Harless* is not applicable.

The crux of the controversy between Hurley and Allied is whether W. Va. Code, 27-5-9(a),[2] creates an implied

---

[2] W. Va. Code, 27-5-9(a), provides:

"No person shall be deprived of any civil right solely by reason of his receipt of services for mental illness, mental retardation or addiction, nor shall the receipt of such services modify or vary any civil right of such person, including, but not limited to, civil service status and appointment, the right to register for and to vote at elections, the right to acquire and to dispose of property, the right to execute instruments or rights relating to the granting, forfeiture or denial of a license, permit, privilege or benefit pursuant to

private cause of action in favor of persons denied private employment solely on the ground that they have received some form of mental health services.

This Court has not had occasion to give detailed consideration to the question of under what circumstances a statute gives rise to an implied private cause of action. In oblique reference to this question, we have said in negligence cases that the violation of a statute or ordinance is *prima facie* evidence of negligence. *See, e.g., Costello v. City of Wheeling*, 145 W.Va. 455, 461, 117 S.E.2d 513 (1960); *Barniak v. Grossman*, 141 W.Va. 760, 765, 93 S.E.2d 49 (1956); *see Scott v. Hoosier Engineering Co.*, 117 W.Va. 395, 185 S.E. 553 (1936). We stated the following qualification to this rule in Syllabus Point 1 of *Steiner v. Muldrew*, 114 W.Va. 801, 173 S.E. 891 (1934):

> "The violation of a statute, intended for the protection of persons of a certain class, cannot be the basis of a cause of action on the part of persons not belonging to the class intended to be protected by the statute."

In some instances we have indicated that an implied right of action may arise from the language of Article III, Section 17 of the West Virginia Constitution, providing that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy to due course of law . . . ." *See, e.g., State Human Rights Commission v. Pearlman Realty Agency*, ___ W.Va. ___, 239 S.E.2d 145 (1977); *Coal & Coke Railway v. Conley*, 67 W.Va. 129, 154, 67 S.E. 613 (1910).

On a number of occasions, the United States Supreme Court has been confronted with the question of whether a given statute gives rise to an implied cause of action.[3]

---

any law, but a person who has been adjudged incompetent pursuant to article eleven [§ 27-11-1 et seq.] of this chapter and who has not been restored to legal competency may be deprived of such rights. Involuntary commitment pursuant to this article shall not of itself relieve the patient of legal capacity."

[3] By the very nature of the inquiry, the problem exists as to those statutes which are silent concerning the right to a private

In *Cort v. Ash*, 422 U.S. 66, 78, 45 L. Ed. 2d 26, 36-37, 95 S.Ct. 2080, ___ (1975), the Court set out a four-factor analysis to determine whether Congress intended to extend a private cause of action in a particular statute:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' Texas & Pacific R. Co. v Rigsby, 241 US 33, 39 [60 L. Ed.874, 36 S.Ct.482] (1916) (emphasis supplied) - that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, e.g., National Railroad Passenger Corp. v National Assn. of Railroad Passengers, 414 US 453, 458, 460 [38 L. Ed. 2d 646, 94 S.Ct. 690 ] (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, e.g., Amtrak, supra; Securities Investor Protection Corp. v Barbour, 421 US 412, 423 [44 L. Ed. 2d 263, 95 S.Ct. 1733] (1975); Calhoon v Harvey, 379 US 134 [13 L. Ed. 2d 190, 85 S.Ct. 292] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See Wheeldon v Wheeler, 373 US 647, 652 [10 L. Ed. 2d 605, 83 S.Ct. 1441] (1963); cf. J. I. Case Co. v Borak, 377

---

cause of action. *See generally* Note, *Implied Causes of Action in the State Courts,* 30 Stanford L. Rev. 1243 (1978); McMahon & Rodos, *Judicial Implication of Private Causes of Action: Reappraisal and Retrenchment,* 80 Dick. L. Rev. 167 (1976); Mowe, *Federal Statutes and Implied Private Actions,* 55 Or. L. Rev. 3 (1976); Note, *Implied Private Actions Under Federal Statutes—The Emergence of a Conservative Doctrine,* 18 Wm. & Mary L. Rev. 429 (1976); Note, *The Phenomenon of Implied Private Actions under Federal Statutes: Judicial Insight, Legislative Oversight or Legislation by the Judiciary?,* 43 Fordham L. Rev. 441 (1974); Note, *Implying Civil Remedies from Federal Regulatory Statutes,* 77 Harv. L. Rev. 285 (1963); Comment, *Private Rights of Action under "Amtrak" and "Ash": Some Implications for Implication,* 123 U. Pa. L. Rev. 1392 (1975).

US 426, 434 [12 L. Ed. 2d 423, 84 S.Ct. 1555] (1964); Bivens v Six Unknown Federal Narcotics Agents, 403 US 388, 394-395 [29 L. Ed. 2d 619, 91 S.Ct. 1999] (1971); id., at 400 [29 L. Ed. 2d 619, 91 S.Ct. 1999] (Harlan, J., concurring in judgment)."

It is obvious that the *Cort* test provides a more rational analysis than that to which we have been accustomed to determine whether a private cause of action is to be implied from a statute. We have utilized one element of the test in *Steiner v. Muldrew, supra,* by requiring that the plaintiff be a member of the class which the statute was intended to protect.

It is also apparent that the fourth and final element of the *Cort* test, whether the cause of action attempted to be inferred from the statute is "traditionally relegated to state law," is not applicable to a state statute. This factor derives from the basic principle of federalism which accords deference to the states in those areas of the law customarily regulated by them, *Santa Fe Industries v. Green,* 430 U.S. 462, 478-80, 51 L. Ed. 2d 480, 495-96, 97 S.Ct. 1292 ____ (1977); *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 40-41, 51 L. Ed. 2d 124, 153, 97 S.Ct. 926, ____ (1977); *see Burks v. Lasker,* 441 U.S. 471, 60 L. Ed. 2d 404, 99 S.Ct. ____ (1979), and is founded on a recognition that Congress would not intend to create by implication a private cause of action which would constitute a new federal right in an area of the law traditionally regulated by the states.

In the case of a state statute, similar logic would suggest that an appropriate fourth step would be to determine whether the cause of action sought to be implied would conflict with a remedy within the exclusive purview of the federal government. Under our system of federalism, the states enjoy a large reservoir of power not pre-empted by federal law. As a result, a state remedy will, more often than not, be parallel or complementary to a federal remedy.[4]

---

[4] We stated in Note 8 of *State ex rel. McLendon v. Morton,* W.Va.____, 249 S.E.2d 919, 924 (1978), that "the availability of a

*Cannon v. University of Chicago*, 441 U.S. 677, 60 L. Ed. 2d 560, 99 S.Ct. 1946 (1979), is the most recent decision of the Supreme Court raising the issue of whether a private cause of action should be implied in the context of a civil rights statute. In *Cannon*, a woman who was allegedly denied admission to a medical school because of her sex brought suit under the following general language of § 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

Applying the first *Cort* factor, to determine whether the statute was enacted to benefit a special class to which the plaintiff belonged, the Court focused initially on the statutory text itself. It found that Congress had "expressly identifie[d] the class [it] intended to benefit," and contrasted the statutory language "customarily found in criminal statutes, ... and other laws enacted for the protection of the general public." [441 U.S. at 690, 60 L. Ed. 2d at 571, 99 S.Ct. at 1954]. In Note 13, the Court emphasized that the statutory language creating a right or duty had traditionally been the most accurate signal of the legislative intent to confer a private cause of action:

> "Not surprisingly, the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action. With the exception of one case, in which the relevant statute reflected a special policy against judicial interference, this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case. . . ." [441

federal remedy is irrelevant" where there is an available state remedy.

U.S. at 690 n. 13, 60 L. Ed. 2d at 571-72, 99 S.Ct. at 1954]

The Court concluded that in drafting Title IX, Congress had "unmistakabl[y] focus[ed] on the benefited class" rather than having simply written "a ban on discriminatory conduct by recipients of federal funds" or "a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." [441 U.S. at 691-93, 60 L. Ed. 2d at 573, 99 S.Ct. at 1955].

The second *Cort* factor, that of legislative history, was applied in *Cannon* by a close examination of not only the congressional debates on Title IX, but also of the entire legislative context, including similar legislation previously enacted and judicial decisions construing that legislation. Before considering the legislative history, the Court pointed out that in the typical case, it was unrealistic to expect legislative history to answer the implication question:

> "We must recognize, however, that the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations such as the present one 'in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling.' Cort, supra, 422 US, at 82, 45 L Ed 2d 26, 95 S Ct, at 2090 (emphasis in original)." [441 U.S. at 694, 60 L. Ed. 2d at 574, 99 S.Ct. at 1956]

*See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, ____ U.S. ____, 62 L. Ed. 2d 146, 153-54, 100 S.Ct. 242, 246 (1979).

A court confronted with the implication question must thus examine existing legislative history to determine its consistency with an implied private cause of action, but that history does not have to demonstrate affirmatively that the legislative body intended an implied ac-

tion. Moreover, state statutes often have sparse legislative history or none at all, *see* Note, *Implied Causes of Action in the State Courts*, 30 Stanford L. Rev. 1243, 1252 (1978), and in its absence, a state court would be unable to utilize the second factor.

The *Cannon* Court stated the third *Cort* factor in the following terms:

> "[A] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." [441 U.S. at 703, 60 L. Ed. 2d at 579, 99 S.Ct. at 1961]

This third element caused the Court to examine both the purposes of the statute and the administrative mechanisms provided to enforce them. The principal administrative mechanism for enforcing Title IX was the termination of federal funds to the institution found to have discriminated in violation of Title IX. Pointing out that this remedy, both objectively and as perceived by Congress, was a blunderbuss - a drastic, ultimate remedy to be reserved for situations where the institution had engaged in systematic discrimination as distinguished from relatively isolated acts of discrimination - the Court concluded that an implied cause of action was best suited to redress isolated claims of discrimination and therefore would not frustrate the underlying purpose of the legislative scheme.

The fourth and final factor, whether a federal remedy would be disruptive to state remedies, caused the Court little difficulty. It found that since the Civil War, federal courts and federal remedies had been the primary bulwarks for the individual claiming discrimination. As we have earlier noted, an analogous fourth consideration in analyzing a state statute to determine if an implied cause of action exists would be to determine if the matter were within the exclusive province of the federal government.

Another illustration of a broad general statute from which the Supreme Court has inferred an implied private cause of action is 42 U.S.C. § 1982, which simply states:

> "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

In *Sullivan v. Little Hunting Park*, 396 U.S. 229, 24 L. Ed. 2d 386, 90 S.Ct. 400 (1969), the Court held that 42 U.S.C. § 1982 gave rise to an implied cause of action in favor of a black lessee of a house who was refused membership in a non-profit corporation. The corporation operated park and playground facilities for the benefit of the local residents. The same statute was found in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 20 L. Ed. 2d 1189, 88 S.Ct. 2186 (1968), to sustain an implied cause of action based on the defendant company's refusal to sell the plaintiff a home solely because he was black. Similar results were reached in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 44 L. Ed. 2d 295, 95 S.Ct. 1716 (1975) (implying action for denial of private employment from language of 42 U.S.C. § 1981, which declares "[a]ll persons ... shall have the same right ... to make and enforce contracts ...."), and *Allen v. State Board of Elections*, 393 U.S. 544, 22 L. Ed. 2d 1, 89 S.Ct. 817 (1969) (implying action under language of § 5 of 1965 Voting Rights Act providing that "no person shall be denied the right to vote ...."). *See also Lau v. Nichols*, 414 U.S. 563, 39 L. Ed. 2d 1, 94 S.Ct. 786 (1974) (allowing private cause of action under declaratory language of § 2000d of 1964 Civil Rights Act banning discrimination "on the ground of race, color, or national origin").

We find that other states have increasingly followed the test set out in *Cort*.[5] We have noted that our own

---

[5] *See Morris v. City of Soldotna*, 553 P.2d 474 (Alaska 1976); *Reliable Collection Agency, Ltd. v. Cole*, 59 Haw. 503, 584 P.2d 107 (1978); *Scroggins v. Allstate Insurance Co.*, 393 N.E.2d 718 (Ill. App.

cases, while tending to suggest some rough approximation of the *Cort* formulation, provide no discrete criteria for determining when a private cause of action should be implied from a particular statute.

We, therefore, set forth the following as the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

Testing W. Va. Code, 27-5-9(a) by these standards, we first ascertain if the plaintiff is within the class that the statute was enacted to benefit. The statute is designed to protect or benefit persons who have received "services for mental illness, mental retardation or addiction." The statutory benefits are not made applicable to "a person who has been adjudged incompetent pursuant to article eleven [§ 27-11-1 et seq.] of this chapter and who has not been restored to legal competency . . . ."

Here, the plaintiff alleges simply that he has received services from a mental health facility and has taken medication for depression. He is thus obviously within the category of the benefited or protected class, and the first criterion is therefore met.

As to the second factor, we are unaware of any legislative history relating to W. Va. Code, 27-5-9(a). Such his-

---

1979); *Teale v. Sears, Roebuck & Co.*, 66 Ill. 2d 1, 359 N.E.2d 473 (1976); *Buck v. Town of Yarmouth*, 402 A.2d 860, 864 (Me. 1979) (Nichols, J., dissenting); *Burnette v. Wahl*, 284 Or. 705, 723, 588 P.2d 1105, 1115 (1978) (Linde, J., dissenting).

For the patchwork of tests employed by state courts prior to *Cort v. Ash*, see Note, *Implied Causes of Action in the State Courts*, 30 Stanford L. Rev. 1243, 1244-45 (1978).

tory would not necessarily be decisive in any event, since, as *Cannon* points out, the omission of an express right of action in the statute typically occurs against a background of legislative silence or ambiguity on this question.

We would be myopic, however, to view W. Va. Code, 27-5-9(a), in isolation, as if it were the sole statute dealing with discrimination against individuals who have received mental health services. The United States Supreme Court has stated that where the legislative history on the implication issue is nonexistent, the intent to imply a private right of action "may appear implicitly in the language or structure of the statute, or *in the circumstances of its enactment.*" [Emphasis supplied]. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, _____ U.S. at _____, 62 L. Ed. 2d at 154, 100 S.Ct. at 246 (1979).

In considering the circumstances surrounding the passage of W. Va. Code, 27-5-9(a), we observe that its enactment followed, as did various enactments by other states designed to benefit the handicapped,[6] that of the federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* This Act provides generally in § 794 that an otherwise qualified handicapped individual cannot be subjected to discrimination under any program or activity receiving federal financial assistance.[7]

The language of W. Va. Code, 27-5-9(a), does not indicate that the Legislature intended that no relief could be obtained by virtue of this provision. The statute cre-

---

[6] *See* Guy, *The Developing Law on Equal Employment Opportunity for the Handicapped: An Overview and Analysis of the Major Issues*, 7 U. Balt. L. Rev. 183, 221-24 and n. 137 (1978); J. Northrup, *Old Age, Handicapped and Vietnam-Era Antidiscrimination Legislation* 100-105 (The Wharton School, Univ. of Pa. 1977); 4 A. Larson, *Employment Discrimination* §§ 108.10, 108.20 (1979), at 22-30—22-33.

[7] In relevant part, 29 U.S.C. § 706(6) (A) defines a handicapped individual as one who "has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment. . . ."

ates no administrative remedy, the presence of which has sometimes caused the Supreme Court to conclude that a private cause of action should not be implied. *Cort v. Ash, supra*.[8] However, the absence of any administrative remedy would tend to suggest that the Legislature was willing to permit private enforcement where, as here, there is a clear statutory declaration to provide relief against discrimination.

It is true that the lack of an administrative remedy is more often considered in connection with the third factor, whether the creation of a private cause of action would frustrate the underlying purpose of the legislative scheme. *Cannon v. University of Chicago, supra*. However, the absence of an administrative remedy does furnish some indication of legislative intent, as we can assume that the Legislature is aware of the doctrine of implied statutory causes of action.[9] We also assume that the Legislature would not enact a remedial statute granting rights to an identifiable class without enabling members of that class to enforce those rights.

In regard to the third factor, the absence of any other method of enforcing the declared right makes it clear that the finding of an implied cause of action would not

[8] As stated in Note 41 of *Cannon v. University of Chicago*, 441 U.S. 677, 707, 60 L. Ed. 2d 560, 581, 99 S.Ct. 1946, 1962-63 (1979):

"True, this Court has sometimes refused to imply private rights of action where administrative or like remedies are expressly available. [Citations omitted]. But it has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the Statute. See Rosado v Wyman, 397 US 397, 406 n 8, 25 L Ed 2d 442, 90 S Ct 1207; cf. Cort v Ash, supra, 422 US, at 74-75, 45 L Ed 2d 26, 95 S Ct 2080; Calhoon v Harvey, supra [379 U.S. 134, 13 L. Ed. 2d 190, 85 S.Ct. 292] . . . ."

[9] This was the assumption of the Court in *Cannon*:

"In sum, it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts [holding that certain civil rights statutes gave rise to an implied cause of action] and that it expected its enactment to be interpreted in conformity with them." [441 U.S. at 699, 60 L. Ed. 2d at 576, 99 S.Ct. at 1958]

frustrate the legislative intent. As the Court stated in *Cannon:*

> "[W]hen that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." [441 U.S. at 703, 60 L. Ed. 2d at 579, 99 S.Ct. at 1961]

Here, an enforcement vacuum exists, and therefore a private cause of action not only does not disrupt the legislative scheme, but provides the means of enforcing its salutary goals.

We come to the fourth factor, whether a private cause of action would intrude into an area delegated exclusively to the federal government. It is obvious that the states and the federal government have an equal concern for handicapped citizens. Indeed, the federal legislation in the area of the handicapped applies generally only to the federal government and to those institutions and entities which receive federal funds. *Southeastern Community College v. Davis,* ____ U.S. ____, 60 L. Ed. 2d 980, 99 S.Ct. 2361 (1979). Consequently, there is an obvious void in regard to the private sector, as well as state and local governmental bodies, that states can and do fill. Moreover, it is clear that state aid to the handicapped is not an area where federal power is exclusive as a result of an express grant, or by necessary implication, under the Federal Constitution. We, therefore, conclude that federal law does not operate to bar a private cause of action.

As a result of our foregoing analysis, we hold that a private cause of action may be inferred from W. Va. Code, 27-5-9(a).

Allied argues, however, that the statute contains no explicit language to suggest that private employment is a civil right. We observe that the statute is drawn in broad and expansive terms, similar to those employed in § 16 of the federal Civil Rights Act of 1870, 16 Stat. 744. In *Johnson v. Railway Express Agency, Inc.,* 421 U.S.

454, 459-60, 44 L. Ed. 2d 295, 301, 95 S.Ct. 1716, ____ (1975), the Supreme Court had no difficulty in construing the present codification of that Act, 42 U.S.C. § 1981, [10] as applying to discrimination in private employment. *Cf. Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 20 L. Ed. 2d 1189, 88 S.Ct. 2186 (1968) (holding that cognate § 1982 applies to private discrimination in the sale of real estate).

There can be little doubt that the language of W. Va. Code, 27-5-9(a), is as broadly drawn as the federal acts which the Supreme Court has rather uniformly held to be applicable to the private sector. We, therefore, conclude that the statutory language does encompass private employment.

As a further practical argument in support of its contention that the statute should not be construed to cover private employment, Allied argues that it will be forced to provide special services or facilities to employees such as Hurley which would be economically burdensome. However, there is no such requirement under the statute. Its design is to prevent an otherwise qualified person from being discriminated against on the basis of his having received services for mental illness, retardation or addiction. This does not justify the conclusion that the employer must undertake any affirmative action or program in order to hire the individual. In this respect, while our statutory language is not identical, we follow the reasoning of *Southeastern Community College v. Davis, supra,* ____ U. S. at ____, 60 L. Ed. 2d at 988, 99 S.Ct. at 2366-67:

> "Section 504 [29 U.S.C. § 794] by its terms does not compel educational institutions to disregard

---

[10] 72 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate. Instead, it requires only that an 'otherwise qualified handicapped individual' not be excluded from participation in a federally funded program 'solely by reason of his handicap,' indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context.

. . . .

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."

A similar approach has been adopted by states where the courts have been confronted with a rehabilitation statute. *See Zorick v. Tynes,* 372 So.2d 133 (Fla. App. 1979) (statutory duty to employ "unless it is shown that the particular disability prevents the satisfactory performance of the work involved"); *Arnot Ogden Memorial Hospital v. State Division of Human Rights,* 67 A.D.2d 543, 416 N.Y.S.2d 372 (1979) ("disability" statutorily defined as physical and mental conditions which are "unrelated to the ability to engage in the activities involved in the job or occupation").

We, therefore, conclude that W. Va. Code, 27-5-9(a), creates an implied private cause of action against a private employer who denies employment to an otherwise qualified individual on the sole basis that such individual has received services for mental illness, mental retardation or addiction.

For the foregoing reasons, we answer the first certified question in the affirmative, the second certified question in the negative, and remand this case to the Circuit Court.

> *Certified questions answered; case remanded.*