735 S.E.2d 266

**Ron DURHAM & Rhonda Durham, Petitioners**

v.

**Freddie JENKINS & Elisha Jenkins, Respondents.**

No. 11–0745.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2012.

Decided Nov. 9, 2012.

**670**

Agnieszka Collins, Esq., Keyser, WV, for Petitioner.

G. Isaac Sponaugle, III, Esq., Sponaugle & Sponaugle, Franklin, WV, for Respondent.

BENJAMIN, Justice:

The petitioners, Ron and Rhonda Durham ("the Durhams"), appeal the March 31, 2011, order of the Circuit Court of Grant County denying the Durhams' motion to dismiss and affirming the Grant County Magistrate Court's order to have the Durhams' dog, a Rottweiler mix, killed pursuant to W. Va. Code § 19–20–20 (1981). The respondents, Freddie and Elisha Jenkins ("the Jenkinses"), brought a civil suit under § 19–20–20 against the Durhams requesting that the magistrate court order the Rottweiler mix killed, alleging that the dog is vicious, dangerous, or in the habit of biting or attacking other people. The Durhams responded by arguing that § 19–20–20 does not provide a mechanism by which parties may bring a civil suit to have a dog destroyed.

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of the Durhams and the Jenkinses, we find that § 19–20–20 does not authorize a civil suit seeking destruction of a dog, and the circuit court erred by denying the Durhams' motion to dismiss. We therefore vacate the circuit court's March 31, 2011, order. While we believe that our statutory law compels this result, we nevertheless are greatly troubled by this incident and the circumstances giving rise to this incident which resulted in the horror the Jenkinses' daughter endured both physically and psychologically.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of September 18, 2010, the Durhams held a birthday party at their home. Elisha Jenkins, one of the plaintiffs below and a respondent herein, along with her two-year-old daughter, Felicity, and her two brothers, Isaiah and Gavin, were among those in attendance at the Durhams' party.

At approximately 10:00 p.m., Felicity walked unsupervised away from the gathering toward an area of the Durham's property where their two fully-grown dogs, a Great Dane mix named Runt and a Rottweiler mix named Duke, were tied on separate dog chains.[1] There was a vicious attack on the child, and her screams roused party-goers to run to her aid. Testimony varies on whether only the Great Dane mix was involved in the attack or the Great Dane mix and the Rottweiler mix were both involved. Felicity was badly injured as a result of the attack.[2]

A police officer was called to the Durhams' residence shortly after the attack, but no formal statements were taken that evening. No formal investigation of the incident was conducted by a law enforcement agency, and no criminal charges were brought against the Durhams. In the days following the attack on Felicity, the Durhams voluntarily euthanized their Great Dane mix.[3]

---

1. The circuit court found that the dogs were tied such that each had its own separate tie-out circle and could touch nose-to-nose, but the dogs could not otherwise physically interact with one another.

2. Felicity suffered extensive and serious injuries to her head, waist, thighs, and back, which have required hospitalization and surgical repair.

3. Testing performed on the Great Dane mix verified that the dog did not have rabies.

On January 31, 2011, the Jenkinses filed a civil suit in the Grant County Magistrate Court requesting that the Durhams' Rottweiler mix, which they alleged to be vicious, dangerous, or in the habit of biting or attacking people, be killed pursuant to W. Va.Code § 19–20–20. A hearing was held, after which the magistrate ordered the dog to be killed. The Durhams appealed the magistrate's order to the Circuit Court of Grant County and moved to dismiss the suit on the ground that § 19–20–20 could not provide the basis for a civil suit to have the dog killed. In its March 30, 2011, order, the circuit court denied the motion to dismiss and directed that the Rottweiler be killed; however, the circuit court stayed its order to allow the Durhams the opportunity to appeal to this Court.

## II.

### STANDARD OF REVIEW

On appeal, this Court is asked to determine whether a civil suit may be brought pursuant to § 19–20–20. Thus, this Court is asked only to determine a question of law. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### ANALYSIS

The Durhams argue that W. Va.Code § 19–20–20 cannot form the basis of the relief requested by the Jenkinses because the section does not provide a private cause of action. Section 19–20–20 states,

Except as provided in section twenty one [§ 19–20–21] of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. Upon satisfactory proof before a circuit court or magistrate that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

The language of § 19–20–20 does not explicitly provide a private cause of action. We must therefore determine whether the section gives rise to an *implied* private cause of action. The test for doing so is four-pronged, and each prong must be satisfied:

"The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government." Syllabus Point 1, *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980).

Syl. pt. 3, *Hill v. Stowers*, 224 W.Va. 51, 680 S.E.2d 66 (2009).

The requirements of the first and fourth prongs are plainly met. Section 19–20–20 acts to protect the public from dogs that are vicious, dangerous, or in the habit of biting or attacking people. The respondents are members of the public, and so they are members of the class for whose benefit § 19–20–20 was enacted. The fourth prong is satisfied because regulation of dog ownership is not delegated exclusively to the federal government.

The second prong is not satisfied; the language of § 19–20–20 evinces the Legislature's intent that § 19–20–20 is entirely criminal in nature and does not give rise to a private cause of action. An examination of W. Va.Code § 19–20–19 (1981), and *State v. Molisee*, 180 W.Va. 551, 378 S.E.2d 100 (1989), supports this conclusion. Section 19–20–19 reads,

A person who violates any of the provisions of this article for which no specific penalty is prescribed is guilty of a misdemeanor, and, upon conviction thereof, shall be fined

not more than one hundred dollars, or imprisoned in the county jail not more than thirty days, or fined and imprisoned. Magistrates shall have concurrent jurisdiction with the circuit courts to enforce the penalties prescribed by this article.

*Molisee* is this Court's only decision referencing either § 19–20–20 or § 19–20–19. In that case, the appellant's dog injured a child. Pursuant to § 19–20–19, the appellant was charged with a misdemeanor for harboring a vicious animal in violation of § 19–20–20. Subsequently, a magistrate determined that the dog was vicious and ordered it to be killed pursuant to § 19–20–20.

In its March 30, 2011, order, the circuit court agreed with the Durhams that the first sentence of § 19–20–20, as established by *Molisee*, is criminal. The circuit court, however, disagreed with respect to the second sentence: "This sentence has nothing to do with a criminal act, but rather is a portion of the statute that governs dogs." It reasoned that because the second sentence requires "satisfactory proof," not "proof beyond a reasonable doubt," this portion of the § 19–20–20 cannot be criminal.

The Court finds error in the circuit court's analysis. Neither the Court nor the Legislature has recognized the language "satisfactory proof" as referring to one specific and overarching standard of proof. Instead, this language has been included in statutes as a general descriptor of the actual standard of proof. *See, e.g.*, W. Va.Code § 61–6–7 (1923) (regarding criminal conspiracy, where "satisfactory proof" is used to describe the standard of proof required in the criminal context: proof beyond a reasonable doubt); W. Va.Code § 16–3–4 (1987) (regarding required immunization of children, where "satisfactory proof" is used to describe standard of proof required in the criminal context: *proof beyond a reasonable doubt*); W. Va.Code § 6–6–7 (1985) (using "satisfactory proof" to describe the standard of proof required to remove a person from county, school district, or municipal office: clear and convincing evidence). There simply is no evidence here that the "satisfactory proof" language in the

second sentence of § 19–20–20 is indicative of the Legislature's intent that the standard of proof in that section be anything less than "beyond a reasonable doubt." We therefore decline to hold that the Legislature would, without explicit language, establish two different standards of proof in the same statutory section.

■ Applying our law as to statutory construction clarifies the unity between the first and second sentences of § 19–20–20. Just as separate statutes of the same subject matter must be read *in pari materia* to give meaning to those statutes, portions of a single section of a statute must also be read together.

A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts.

Syl. pt. 1, *State ex rel. Holbert v. Robinson*, 134 W.Va. 524, 59 S.E.2d 884 (1950).

The first sentence of § 19–20–20 plainly is criminal in nature and requires a standard of proof of "beyond a reasonable doubt." Statutory construction establishes that the second sentence of § 19–20–20 is linked to the established criminal nature of the first sentence. Thus, absent explicit direction from the Legislature to the contrary, the construction of § 19–20–20 evidences the Legislature's intent that the entire section is criminal in nature, giving rise to only criminal proceedings. To conclude otherwise would require us to read into § 19–20–20 something which simply is not there.

The third prong of the test in *Hill v. Stowers*—whether a private cause of action is consistent with the underlying purposes of the legislative scheme—is also unsatisfied. The circuit court compared § 19–20–20 with W. Va.Code § 19–20–18 (1986)[4] in an at-

---

4. § 19–20–18. Same—Duty of owner to kill     dog; proceeding before magistrate on failure

tempt to show that a private cause of action exists pursuant to § 19–20–20 consistent with the private cause of action provided in § 19–20–18. The circuit court said, "Certainly a parent of an injured child is entitled to the same procedural protections and opportunity to request the destruction of a dangerous dog as are afforded the owner of a dead sheep."

The parallel the circuit court attempts to draw between §§ 19–20–18 and –20 fails because the two sections are radically different. Unlike § 19–20–20, § 19–20–18 does not contain a criminal component. Instead, the Legislature provided a civil remedy for livestock owners whose animals are subject to killing, wounding, or worrying by a dog. Section 19–20–18 provides a civil course through which the owner of livestock can request the destruction of a dog so as to protect future damage to his personal property by that dog. The Legislature could have extended § 19–20–18 to apply to a case such as that before us. It did not, however. While we may not disagree with the circuit court from a personal standpoint, we are obliged to give effect to these statutory sections as they are written, not as we might have preferred they be written.

Section 19–20–20 is not like § 19–20–18. Where § 19–20–18 deals with livestock, which is personal property, § 19–20–20 declares that it is a crime to own a dog that is a danger to people. Section 19–20–20, which is entirely criminal in nature, only provides for the killing of a dog when it is first found that the dog's owner committed a crime described in the first sentence of the section. During that criminal proceeding, upon finding that the dog is dangerous, which is an element of the crime to be proved, the judge may then order the dog killed.

For a magistrate or circuit court to obtain authority to order a dog killed, the magistrate or judge must first find, upon conducting a criminal proceeding, that a crime described in the first sentence of § 19–20–20 has been committed. This Court holds that the authority to order a dog killed pursuant to W. Va.Code § 19–20–20 (1981), stems solely from a criminal proceeding, and a private cause of action may not be brought for the destruction of a dog under this section.

## IV.

## CONCLUSION

For the reasons set forth above, this Court vacates the circuit court's order entered March 31, 2011, which orders that the Durham's Rottweiler mix be destroyed.

Vacated.

Justice WORKMAN dissents and reserves the right to file a separate opinion.

WORKMAN, Justice, dissenting.

I adamantly disagree with the majority's conclusion in this case that respondents may not seek judicial determination that the dog at issue in the case *sub judice* is vicious or dangerous and commensurately request an order pursuant to W. Va.Code § 19–20–20 that the dog be euthanized.

**of owner to kill.**
The owner or keeper of a dog that has been worrying, wounding, chasing or killing any sheep, lambs, goats, kids, calves, cattle, swine, show or breeding rabbits, horses, colts, or poultry not the property of the owner or keeper, out of his enclosure, shall, within forty-eight hours, after having received notice thereof in writing from a reliable and trustworthy source, under oath, kill the dog or direct that the dog be killed. If the owner or keeper refuses to kill the dog as hereinbefore provided, the magistrate, upon information, shall summon the owner or keeper of the dog, and, after receiving satisfactory proof that this dog did the mischief, shall issue a warrant on application being made by the owner of the sheep, lambs, goats, kids, calves, cattle, swine, show or breeding rabbits, horses, or colts, or poultry killed; and give it into the hands of the sheriff, who shall kill the dog forthwith or dispose of by other available methods. The cost of the proceedings shall be paid by the owner or keeper of the dog so killed, including a fee of fifty cents to the officer killing the dog. The owner or keeper of the dog so killed shall, in addition to the costs, be liable to the owner of the sheep, lambs, goats, kids, calves, cattle, swine, show or breeding rabbits, horses, colts, or poultry or to the county commission for the value of the sheep, lambs, goats, kids, calves, cattle, swine, show or breeding rabbits, horses, colts, or poultry so killed or injured.

The facts of this case are horrific. A three-year-old girl was seriously injured when she wandered into an area where two dogs were penned. The trial court concluded that the evidence revealed that both dogs participated in mauling the young girl, resulting in her scalp being ripped from her head from behind her bangs, half way down the back of her head and from ear to ear, as well as infliction of other serious bite wounds. The owners of the dogs voluntarily euthanized one dog, known as "Runt," but apparently believing that the other dog did not participate—even in the face of testimony that the two dogs were playing "tug-of-war" with the child—refused to euthanize the other dog, known as "Duke." The local authorities were present on the scene after the attack occurred, but for reasons which are not revealed in the record, neither investigated nor pursued the matter further. After an evidentiary hearing, the trial court determined that there was sufficient evidence that Duke participated in the mauling and found that W. Va.Code § 19–20–20 permitted respondents to seek judicial determination that the dog was vicious or dangerous and seek its destruction.

The majority disagrees, finding that there is no "private cause of action" implied in W. Va.Code § 19–20–20 and that destruction of a dangerous or vicious dog is merely part and parcel of a larger criminal prosecution. In reaching its conclusion, I believe the majority wholly ignored the Legislature's intent in enacting W. Va.Code § 19–20–20, improperly framed the issue and, in so doing, leapt to several unsupported conclusions. The majority reasons that because W. Va.Code § 19–20–19 criminalizes violations of any of the provisions of Article 20 for which no specific penalty is prescribed, W. Va.Code § 19–20–20 is, in its entirety, a wholly criminal statute. The majority then concludes that, because the statute is criminal in nature, the Legislature did not intend a "private cause of action." However, I believe the analysis is far simpler and requires only implementation of the Legislature's unmistakable intent and observance of the plain language of the statute.

Syllabus point 1 of *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) states that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Moreover, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Without question, and as acknowledged by the majority, W. Va.Code § 19–20–20 "acts to protect the public from dogs that are vicious, dangerous, or in the habit of biting or attacking people."

First, I believe that the majority mischaracterizes the type of action asserted here. Respondents did not seek to establish petitioners' liability for *damages* in this action, but rather simply sought destruction of the dog as plainly permitted by the statute upon proper showing that he was dangerous. As such, respondents did not seek to pin "liability" on petitioners by virtue of "violation of statute" for purposes of seeking money damages, as permitted by W. Va.Code § 55–7–9: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages." This is a significant distinction because ordinarily, it is when this statute is utilized to form the basis for an action for damages that the analysis of whether the statute supports such an action is undertaken: "Whenever a violation of a statute is the centerpiece of a *theory of liability*, the question arises whether the statute creates an implied private cause of action." *Yourtee v. Hubbard*, 196 W.Va. 683, 687–88, 474 S.E.2d 613, 618 (1996)(emphasis added).

Rather, respondents simply sought to produce "satisfactory proof" to the court to seek an order for destruction of the dog, as plainly permitted by W. Va.Code § 19–20–20. The statute is wholly silent as to who may seek this relief. As such, and as conceded in petitioners' brief, petitioners' challenge to this action is one of standing. Petitioners do not argue that satisfactory proof was not

provided, nor that they were not provided adequate due process in seeking the destruction of the dog—simply that respondents had no standing to seek such relief. As explained by this Court in our seminal case on standing, " 'when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue[.]' " *Findley v. State Farm Mut. Automobile Ins. Co.*, 213 W.Va. 80, 95, 576 S.E.2d 807, 822 (2002) (citing *Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Therefore, petitioners' challenge is whether respondents are a proper party to request adjudication of the dangerousness or viciousness of their dog.

In that regard, it is clear that respondents have standing. Syllabus point 5 of *Findley* states:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

*Id.* The majority, however, fails to address the standing issue, choosing instead to recast the narrow issue of *who* may seek the relief permitted in the statute as a broader issue of whether there is an implied cause of action supported by the statute.

Even assuming the issue is properly framed as an "implied cause of action" issue, the majority mishandles the analysis. The majority analyzes whether a cause of action is implied in the statute by utilizing the oft-cited, four-factor analysis first adopted by this Court in Syllabus Point 1, in part, *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980):

> (1) The plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of ac-

tion was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusive to the federal government.

However, the majority takes an overly restrictive view of the *Hurley* factors, unilaterally declaring that "each prong must be satisfied" and declaring factors two and three unsatisfied. This Court has never held that all factors must be satisfied; indeed the United States Supreme Court decision from which the *Hurley* test was derived states simply that the four factors are "relevant." *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In fact, the language of the test itself indicates that it is not a precise, formulaic checklist which must be completed before finding an implied cause of action through use of phrases such as, "consideration must be given" and "an analysis must be made."

This is a particularly dangerous view given that one of the two factors which the majority holds is not satisfied is one which this Court has indicated is typically of little value in the analysis or cannot be utilized at all. The second factor of *Hurley*—requiring analysis of the legislative intent—does not authorize rampant speculation into the Legislature's intention, but rather requires analysis of the legislative *history* of the statute. However, even the United States Supreme Court declared it "unrealistic" to expect the legislative history to provide guidance:

> We must recognize, however, that the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. Therefore ... " 'it is not necessary to show an intention to Create a private cause of action, although an explicit purpose to Deny, such cause of action would be controlling.' "

*Cannon v. University of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (quoting *Cort*, 422 U.S. at 82, 95 S.Ct. 2080). More pointedly, however, this Court stated that in absence of such legislative history, the second factor is moot:

A court confronted with the implication question must thus examine existing legislative history to determine its consistency with an implied private cause of action, but that history does not have to demonstrate affirmatively that the legislative body intended an implied action. *Moreover, state statutes often have sparse legislative history or none at all, and in its absence, a state court would be unable to utilize the second factor.*

*Hurley,* 164 W.Va. at 275–6, 262 S.E.2d at 762 (citations omitted) (emphasis added). The majority opinion contains no reference to or analysis of the legislative history of the statute and merely speculates about what the Legislature must have intended, summarily declaring that W. Va.Code § 19–20–20 "fails" this factor.

As to the third factor—whether an implied cause of action is consistent with the underlying purpose of the legislative scheme—the majority engages in more speculation as to the Legislature's intent with no analysis of the *purpose* of the legislative scheme. In essence, the majority reasons that if the Legislature wanted to provide a mechanism for a private citizen to seek destruction of a dog—as it did with dogs "worrying" livestock in W. Va.Code § 19–20–18—it could have done so. This reasoning essentially dispenses with the need to *ever* determine whether a statute gives rise to a private cause of action. This rationale misses the point of the analysis entirely. Our role is not to speculate about legislative intent—in absence of any indication either way in the statute or its history—and then simply presume that if the Legislature had intended a private cause of action, it would have said so. The majority fails to articulate how a private citizen's petition to enforce what the statute clearly provides for frustrates the purpose of the statute. There is no question that permitting respondents to seek this relief "not only does not disrupt the legislative scheme, but provides the means of enforcing its salutary goals." *Hurley,* 164 W.Va. at 281, 262 S.E.2d at 764.

The majority's analysis appears driven almost entirely by its erroneous conclusion that W. Va.Code § 19–20–19 criminalizes the statute as a whole, which in its view, there-fore negates the intention to provide for the ability of a private citizen to seek destruction of a vicious dog. If that were true, then no violation of a criminal statute would ever be found to support a private cause of action. This Court has not hesitated to hold that a statute, violation of which may give rise to criminal prosecution, may likewise support a private cause of action where the public policy and enforcement underlying the statute are furthered by such an action. *See Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990) (providing for implied cause of action for sale of beer to person under twenty-one in violation of W. Va.Code § 11–16–18(a)(3)).

Continuing its insistence that the statute is exclusively criminal and in an effort to reach the real issue presented—*who* may seek destruction of a vicious or dangerous dog—the majority then makes an extraordinary leap that is simply not supported by the plain language of the statute. The majority states that "[s]ection 19–20–20, which is entirely criminal in nature, only provides for the killing of a dog *when it is first found that the dog's owner committed a crime* described in the first sentence of the section. *During that criminal proceeding,* upon finding that the dog is dangerous, which is an element of the crime to be proved, the judge may then continue on to order the dog killed[ ]" (emphasis added). This remarkably unsubstantiated conclusion indicates that only the prosecuting attorney may seek the destruction of a dangerous or vicious dog and then, *only if* he is first successful in obtaining a criminal conviction of its owner. Quite simply, W. Va.Code § 19–20–20 does not state or even suggest any such thing. It is also a thoroughly barbaric suggestion that the Legislature intended to have an animal put to death as punishment of the animal's owner.

The statute makes two distinct and independently operative provisions. First, the statute provides that it is unlawful for a person to keep or harbor a dog *known by him* to be vicious, dangerous, or in the habit of biting or attacking other persons. This is the criminal aspect of the statute and the specific "provision" of Section 20, violation of which is subject to a criminal penalty pursu-

ant to W. Va.Code § 19–20–19. Secondly, the statute authorizes the humane officer to kill a vicious or dangerous dog upon proper finding by a circuit or magistrate court. This portion of the statute makes no reference whatsoever to the condition precedent created by the majority that before a dog may be euthanized under the statute, the owner must first be convicted of a crime or that such request may only be made in the course of a criminal proceeding. The plain language of the statute reveals that neither of the two provisions in the statute is dependent upon the other for operation. Even if a criminal conviction is not pursued or secured for whatever reason, including but not limited to a lack of knowledge as required by statute, there is nothing which prevents a court from ordering destruction of the dog upon a finding that it is vicious, dangerous, or in the habit of biting or attacking other persons. More importantly, there is nothing which indicates that only the prosecuting attorney may make such a request.

It is this forced attempt to pigeon-hole the entirety of the statute as criminal which resulted in the majority's erroneous conclusion. The statute is wholly silent as to who may initiate such a proceeding for court determination or who must provide the "satisfactory proof." It simply does not follow that only the prosecuting attorney, in the context of a criminal prosecution, may seek destruction of a vicious dog. In reaching this conclusion, again, the majority overlooks the entire purpose of the statute—to protect the public from vicious dogs. Given such an important purpose, it should scarcely matter who or which entity initiates the proceeding to seek judicial determination that the dog is vicious. Moreover, it is entirely nonsensical that a vicious or dangerous dog may be free to remain a menace to the public if the already overburdened prosecuting attorney declines to prosecute the owner, or realizes he cannot prove that the owner was aware of the dog's propensity for violence. Furthermore, there is no evidence whatsoever that the Legislature intended to protect the public only from dogs whose owners knew them to be vicious prior to an attack. The threat to the public exists by virtue of the viciousness of the dog—not through the knowledge of the owner. Knowledge of the owner is dealt with in the criminal aspect of W. Va.Code § 19–20–20.

As the majority itself notes: "[t]he general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts." Syl. Pt. 1, *State ex rel. Holbert v. Robinson*, 134 W.Va. 524, 59 S.E.2d 884 (1950). I agree whole-heartedly with the trial court which stated that "[c]ertainly a parent of an injured child is entitled to the same procedural protections and opportunity to request the destruction of a dangerous dog as are afforded the owner of a dead sheep" [under W. Va.Code § 19–20–18].

Because I believe that the majority's decision decisively undermines the legislative purpose underlying W. Va.Code § 19–20–20, I respectfully dissent.