459 S.E.2d 151

**Jessica DUNN and Jason Dunn, et al., Plaintiffs,**

v.

**KANAWHA COUNTY BOARD OF EDUCATION, et al., Defendants.**

No. 22550.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 28, 1995.

Decided May 19, 1995.

Guy R. Bucci, Robert C. Chambers, Bucci, Chambers & Willis, L.C., Charleston, and James T. Cooper, Henry R. Glass, III, Lovett, Cooper & Glass, Charleston, and Carl S. Kravitz, David N. Webster, Caplin & Drysdale, Washington, DC, for plaintiffs.

David L. Shuman, Shuman, Annand & Poe, Charleston, and Avrum Levicoff, Brown, Levicoff & McDyer, Beckley, and Michael Fisher, Offutt, Eifert, Fisher, Duffield & Nord, Huntington, and William J. Cooper, Jacobson, Maynard, Tuschman & Kalur, Charleston, for amicus, WV General & Plastic Surgeons.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for amicus, The Builders Supply Ass'n of WV.

Jeffrey M. Wakefield, William L. Ballard, Christine Fox, Richard D. Jones, Tracy L. Webb, Flaherty, Sensabaugh & Bonasso, Charleston, for defendant, Kanawha County Bd. of Educ.

Paul M. Friedberg, David Johnson, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, and Donald W. Fowler, Joe G. Hollingsworth, Katharine R. Latimer, Bruce J. Berger, Spriggs & Hollingsworth, Washington, DC, for defendant, Velsicol.

Charles R. McElwee, Robinson & McElwee, Charleston, for amicus, The WV Hosp. Ass'n.

Anita R. Casey, Renatha S. Garner, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for amicus, CSM Systems, Inc.

A.L. Emch, Anthony Majestro, William D. Esbenshade, Jackson & Kelly, Charleston, for amicus, WV Retailers Ass'n.

Cheryl A. Eifert, Blake Benton, Offutt, Eifert, Fisher, Duffield & Nord, Huntington,

for amicus, American Medical Ass'n and West Virginia State Medical Ass'n.

FOX, Judge: [1]

We accepted this certified question from the Circuit Court of Kanawha County, West Virginia, to consider whether a good faith settlement between a plaintiff and a defendant in a multiparty lawsuit extinguishes the rights of non-settling defendants to seek indemnification from the settling defendant.

The sixty-seven plaintiffs from three consolidated lawsuits are students, parents, teachers, and others who allege injuries resulting from exposure to toxic substances at Andrew Jackson Junior High School, in Cross Lanes, West Virginia. One of the toxic substances was a termiticide known as chlordane.

The plaintiffs initially asserted numerous theories of liability against various defendants, including negligence, willful, wanton, and reckless misconduct, breach of warranty, strict product liability, and deliberate intent to injure an employee. However, the focus of this certified question is the plaintiffs' product liability claim against Velsicol Chemical Corporation. Velsicol is the only United States manufacturer of technical chlordane, which is chlordane in its purest form and is used to make other chlordane-containing compounds.[2] In addition to suing Velsicol, the plaintiffs are pursuing product liability claims against others in the chain of distribution, including distributors and applicators of chlordane. Defendants Kanawha County Board of Education and Robert Klatzkin, a former principal at Andrew Jackson Junior High School (hereinafter referred to collec-

tively as the BOE), contend the defendant manufacturer Velsicol is ultimately responsible for damages caused by its defective product.

On 1 April 1994, the plaintiffs agreed to dismiss all claims against Velsicol in exchange for a substantial monetary settlement. Pursuant to court order, the amount of the settlement remained confidential, but non-settling defendants were informed and given the opportunity to challenge its reasonableness. Velsicol intends for this settlement, reached prior to a judicial determination of liability, to extinguish all potential claims arising from this lawsuit, including claims for implied indemnity. However, because Velsicol's settlement agreement did not include therein a release from liability, the non-settling defendants in the chain of distribution want to be able to seek indemnification from Velsicol if they are subsequently made to pay damages to the plaintiffs for injuries they contend Velsicol was solely responsible for as the manufacturer of the defective product.

On 22 April 1994, the plaintiffs and Velsicol jointly requested that the circuit court find their settlement was in good faith in order to extinguish any potential claims against Velsicol for both contribution and indemnification. The non-settling defendants potentially affected by this settlement objected on the grounds that (1) a factual determination of good faith was premature, and (2) a finding of a good faith settlement does not extinguish claims for implied indemnity.[3] Following a hearing, the circuit court tentatively found the settlement was in good faith but deferred

---

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

2. The defendant BOE states that in October 1987 the EPA issued a Final Cancellation Order prohibiting all sale, use, or distribution of chlordane after 15 April 1988.

3. The non-settling defendants who objected to the settlement were the Kanawha County Board of Education and Robert Klatzkin, Bruce Terminex of West Virginia, Inc., Terminex International Company, L.P., and Forshaw Distribution, Inc.

According to the defendant BOE, Forshaw Distribution, Inc., a distributor of chlordane, was sued because it sold chlordane to a commercial applicator. Forshaw and other defendants have since settled. The Board, Alford Termite & Pest Control (which has not participated in the defense of this case), and General Exterminating (which has not entered an appearance in this case) are remaining defendants.

its ruling on the settlement's effect on any cross-claims against Velsicol.

After a second hearing on 6 May 1994, the circuit court concluded the settlement was negotiated in good faith and it barred claims for contribution against Velsicol. However, the circuit court ruled that claims for implied indemnity would not be extinguished by the good faith settlement.

On 24 May 1994, the plaintiffs and Velsicol moved for reconsideration of the 6 May 1994 ruling on the implied indemnification issue. The circuit court denied the motion for reconsideration on 31 May 1994, and an order certifying the indemnification issue to this Court was entered on 8 July 1994.

On 12 October 1994, this Court granted the joint petition for review of the following certified question:

Whether a good faith settlement by a defendant extinguishes rights of non-settling defendants and others for implied indemnity against the settling defendant under West Virginia law?

The Circuit Court of Kanawha County, West Virginia, the Honorable Paul Zakaib, Jr., presiding, answered the question in the negative, finding there is a legal and factual distinction between claims of implied indemnification and claims for contribution.

Relying primarily on language found in *Smith v. Monongahela Power Co.*, 189 W.Va. 237, 429 S.E.2d 643 (1993), the plaintiffs and Velsicol now contend the 6 May 1994 circuit court ruling was erroneous, and argue this Court's prior decisions establish that their good faith settlement extinguishes all contribution and indemnification claims the non-settling defendants might wish to assert against Velsicol.

However, the BOE argues the plaintiffs and Velsicol have confused the issues by treating contribution and indemnification as identical legal concepts, when, in fact, "the concept of indemnification plays a unique role and is clearly distinct from contribution in product liability cases." We agree.

■ Indemnification and contribution are separate and distinct legal concepts. "The idea of indemnity implies a primary or basic liability in one person, though a second person is also for some reason liable with the first, or even without the first, to a third person. Discharge of the obligation by the second person leaves him with a right to secure compensation from the one who, as between themselves, is primarily liable."[4] There are two types of indemnity. Express indemnity is based upon a written agreement between the parties, while implied indemnity is based upon the relationship between the parties. In syllabus points 1 and 2 of *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), this Court explained:

1. "The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or the common law, but the actual cause of the injury was the act of the indemnitor." Syllabus Point 2, *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980).

2. Implied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity.

■ "Very broadly, contribution is the right of one who owes a joint obligation to call upon his fellow obligors to reimburse him if compelled to pay more than his proportionate share of the obligation. Limiting this definition to the tort context, contribution is a method to promote an equitable distribution of loss among those who are jointly and severally liable for a given wrong."[5] Contri-

4. Leflar, Robert A., *Contribution and Indemnity Between Tortfeasors*, 81 U.Pa.L.Rev. 130, 146 (1932).

5. Stoneking, James B., *Beyond Bradley: A Critique of Comparative Contribution in West Virginia and Proposals for Legislative Reform*, 89 W.Va.L.Rev. 167, 170 (1986).

bution was distinguished from indemnity in syllabus point 4 of *Sydenstricker:*

> The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation. One of the essential differences between indemnity and contribution is that contribution does not permit a full recovery of all damages paid by the party seeking contribution. Recovery can only be obtained for the excess that such party has paid over his own share.

The doctrine of contribution and the effect of a good faith settlement between a plaintiff and one of multiple joint tortfeasors on the rights of non-settling joint tortfeasors to contribution were discussed at length by this Court in *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990). In syllabus point 2, we explained:

> A defendant in a civil action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. This is termed an "inchoate right to contribution" in order to distinguish it from the statutory right of contribution after a joint judgment conferred by W.Va.Code, 55–7–13 (1923).

Further, in syllabus point 6 of *Zando,* this Court explained that contribution rights are terminated by a good faith settlement, stating that "[a] party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution." However, whether a good faith settlement terminates a non-settling defendant's right to seek implied indemnification against the settling defendant is an issue that has not been addressed by this Court until now.

The principles of *Zando* regarding contribution rights among joint tortfeasors were reiterated in *Smith, supra,* an opinion in which this Court set forth specific criteria to aid in determining whether a settlement is in fact made in good faith. As we noted above,

the plaintiffs and Velsicol now rely upon language found in *Smith* to support their contention that the law in West Virginia is that any indemnification claims a non-settling defendant might wish to assert against the settling defendant are also extinguished by a good faith settlement.

In *Smith,* John Q. Hutchinson was electrocuted when he was working on a truck manufactured by Dico which came into contact with a power line owned and operated by Monongahela Power Company. Dennis Dwight Smith, as administrator of Hutchinson's estate, sued Monongahela Power for negligence, and Monongahela Power filed a third-party complaint against manufacturer Dico for contribution, alleging that defective truck design was a proximate cause of Hutchinson's death. *Smith,* 429 S.E.2d at 646.

Dico settled with the Hutchinson estate before trial. After the verdict, Monongahela Power and the estate reached a settlement, under which Monongahela Power reserved its right to pursue contribution claims from others, including Dico. Dico moved to dismiss Monongahela Power's claim on the grounds that its settlement with the estate insulated it from Monongahela Power's claims for contribution. The trial court granted Dico's motion. *Id.* at 647.

The issue in *Smith* was whether a settlement entered into between a nonparty (Dico) and a claimant (Smith) prior to the instigation of a lawsuit would discharge the nonparty (Dico) from further obligation to either the claimant (Smith) or the nonparty's joint tortfeasor (Monongahela Power). This Court agreed with the lower court's finding that Monongahela Power's right to seek contribution from nonparty/joint tortfeasor Dico was extinguished by the good faith settlement between Dico and Smith.

In the case now before us, the plaintiffs and Velsicol rely heavily on *Smith* because of the following language contained in the opinion: "Accordingly, we find Monongahela Power's right to seek contribution *or indemnification* from Dico was extinguished by the settlement between the Hutchinson estate and Dico, provided that the settlement was in

good faith." *Id.* at 649 (emphasis added). Despite this reference to indemnification, the facts indicate quite clearly that *Smith* was only about a claim for contribution.[6] This single reference to indemnification was unnecessary in the context of the opinion.[7]

*Smith* is also distinguishable from the case now before us because the relationship between Monongahela Power and Dico did not give rise to a right of implied indemnity. Monongahela Power and Dico were joint tortfeasors. Dico settled with the claimant before trial, and Monongahela Power settled afterwards. The issue was whether Monongahela Power had a right to pursue a contribution claim against Dico, not an indemnification claim. A non-settling defendant's right to seek indemnification from the settling defendant following a good faith settlement in a product liability case is the only issue now before this Court. Reliance upon *Smith* as precedent is pointless, because although that case addressed a similar question, the issue was raised in the context of contribution claims.

To argue that both contribution and implied indemnity claims should be extinguished by a good faith settlement is to ignore the substantive differences between the two legal concepts. "While contribution permits one tortfeasor to shift a part of the loss to another, the purpose of indemnity is to shift *the whole loss.*"[8] As we noted above, a fundamental distinction between indemnity and contribution is the absence of fault on the part of the party who seeks indemnification. Contribution claims involve joint tortfeasors who share some degree of fault;

their liability is premised upon independent negligent acts. However, the only real tortfeasor in an implied indemnity action is the indemnitor, who commits the tort which causes injury.

■ In product liability cases, the manufacturer is often the culpable tortfeasor as a result of conduct associated with designing or manufacturing a defective product. Product liability law in this State permits a plaintiff to recover where the plaintiff can prove a product was defective when it left the manufacturer and the defective product was the proximate cause of the plaintiff's injuries. *Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666, 677 (1979). Strict liability in tort relieves the plaintiff from proving the manufacturer was negligent, and instead permits proof of the defective condition of the product as the basis for liability. Because the product manufacturer is not always accessible to the plaintiff, strict liability extends to those in the product's chain of distribution. Thus, an innocent seller can be subject to liability that is entirely derivative simply by virtue of being present in the chain of distribution of the defective product.

■ Extending liability to those in the chain of distribution in this manner is meant to further the public policy that an injured party not have to bear the cost of his injuries simply because the product manufacturer is out of reach. The liability of a party in the chain of distribution is based solely upon its relationship to the product and is not related to any negligence or malfeasance. For this reason, this Court acknowledged the right of

---

**6.** Although indemnification and contribution are separate and distinct legal concepts, leading commentators have noted that these terms are sometimes incorrectly treated as interchangeable:

> There is an important substantive difference between, first, an order distributing loss among tortfeasors by requiring others each to pay a proportionate share to one who has discharged their "joint" liability and, second, an order requiring another to reimburse in full one who has discharged a common liability. In the prevailing usage, the first is referred to as contribution; the second, as indemnity. Because of either confusion or deliberate departure from prevailing usage, however, there are decisions in which full reimbursement has

been allowed under the name of contribution, or some form of distribution has been allowed under the name of indemnity.

W. Page Keeton, et al., *Prosser and Keeton on Torts,* § 51 (5th ed.1984) (footnotes omitted).

**7.** We realize this language could again be cited to support the proposition that a good faith settlement between a plaintiff and defendant in a multiparty litigation extinguishes a non-settling defendant's right to seek indemnification from the settling defendant. We believe, however, that the inclusion of "or indemnification" in the *Smith* case was mere surplusage and, therefore, should be disregarded.

**8.** Stoneking, *supra,* note 9, at 168.

implied indemnity in note 22 of *Morningstar, supra.* In syllabus point 1 of *Hill v. Joseph T. Ryerson & Son,* 165 W.Va. 22, 268 S.E.2d 296 (1980), we held that "[a] seller who does not contribute to the defect in a product may have an implied indemnity remedy against the manufacturer of the product, when the seller is sued by the user." "[I]n the field of product liability, the concept underlying allowance of indemnity is that the indemnitee has been rendered liable because of a nondelegable duty arising out of common or statutory law, but the actual cause of the injury has been the act of another person." *Hill,* 268 S.E.2d at 301. The remedy of implied indemnity provides an innocent seller, or indemnitee, with the means to seek restitution from the actual wrongdoer, or indemnitor.

Again, we emphasize that the right to seek implied indemnity belongs only to a party who is without fault. If a seller in some way contributes to a product defect, the seller and manufacturer are jointly responsible for damages the product causes, and the seller has no right to seek implied indemnity. Instead, because of the shared fault, the rules of contribution would apply. However, the rules of both contribution and indemnity could apply where a seller does not contribute to a defect in a product, but commits an independent act of negligence or is at fault in some other manner.

Indemnification is a remedy available to innocent parties who have been held strictly liable and made to pay for injuries caused by others. It would defeat all notions of fairness and equity to deprive an innocent party of the means to seek reimbursement from a culpable manufacturer simply because that manufacturer reached a "good faith" settlement with the injured plaintiff. Velsicol now complains that: "Notwithstanding Velsicol's good faith, its payment of substantial proceeds to plaintiffs, and its motivation to buy peace, Velsicol has not obtained peace. Velsicol has instead bought only the risk of continued liability via implied indemnification claims and the burden of having to continue to defend its products."

However, we believe if Velsicol truly wanted to "buy peace," then, as the manufacturer of the allegedly defective product, Velsicol should have included lesser defendants in the chain of distribution within the terms of the settlement agreement, thereby eliminating its own risk of continued liability via implied indemnification claims. If chlordane is determined to be a defective product, and it is also determined the non-settling defendants did nothing independently wrong or in no way contributed to the defect, then equity demands that Velsicol indemnify the non-settling defendants if they are ultimately found liable for damages caused by its product.

Therefore, our answer to the certified question is negative: In a multiparty product liability lawsuit, a good faith settlement between the plaintiff(s) and the manufacturing defendant who is responsible for the defective product will not extinguish the right of a non-settling defendant to seek implied indemnification when the liability of the non-settling defendant is predicated not on its own independent fault or negligence, but on a theory of strict liability.

In fact, it is arguable that basic fairness and sound public policy dictate that a settlement by a plaintiff with the manufacturing defendant solely responsible for the defective product covers all damages caused by that product and extinguishes any right of the plaintiff to pursue others in the chain of distribution who did not make the product, contribute in any way to the defect, or commit any independent acts of negligence or fault. However, this issue was not raised by this certified question, and we leave its resolution for a later time.

Certified question answered.

Justice BROTHERTON did not participate.

Judge FOX sitting by temporary assignment.