**CSX TRANSPORTATION INC., Plaintiff,**

v.

**PKV LIMITED PARTNERSHIP, et al., Defendant.**

**Civ. A. No. 2:94–0647.**

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 16, 1995.

**340**

Andrew S. Zettle, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for plaintiff CSX Transportation, Inc., a corporation.

Donald B. O'Dell, Lamp, O'Dell, Bartram & Entsminger, Huntington, WV, for defendants PKV Limited Partnership, a limited partnership, KV Oil & Gas, Inc., a corporation.

B. Karleton Kesner, Daniel W. Greear, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, WV, for defendants D & D Contractors, a partnership, Darrell Thaxton, Darrell Carpenter, dba D & D Contractors.

R. Ford Francis, Charleston, WV, for defendant Kermit R. Tyree, individually and dba Kermit Tyree Contracting.

John D. Hoffman, John F. McCuskey, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, WV, for defendant Charles L. Price dba C.L. Price Dozer Service.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are motions by PKV and KV to dismiss cross-claims, or alternatively, to sever them for separate trials and cross-claims by all parties for summary judgment. All issues have been briefed exhaustively and are ripe for decision. For reasons that follow, the motions to dismiss the cross-claims will be **GRANTED** and the motions for summary judgment will be **DENIED**.

## MOTION TO DISMISS OR SEVER CROSS–CLAIMS

On July 27, 1995, the Court dismissed without prejudice Plaintiff's claims against PKV and KV based on a settlement reached among those parties. Defendants Thaxton, Carpenter, D & D, and Price moved to vacate the dismissal order, arguing that order would extinguish their cross-claims for indemnification against Defendants PKV and KV improperly. The Court requested further briefing on the issues raised by the non-settling defendants. After thorough reconsideration, the Court again concludes PKV and KV should be dismissed from the action.

## IMPLIED INDEMNITY

Because subject matter jurisdiction is based on diversity of citizenship, West Virginia law controls the indemnity claims. Thaxton, Carpenter, D & D, and Price, the non-settling Defendants, contend that under *Dunn v. Kanawha County Board of Education*, 194 W.Va. 40, 459 S.E.2d 151 (1995), their cause of action for implied indemnity against PKV and KV should not be extinguished by the settlement between Plaintiff and PKV and KV. PKV and KV, on the other hand, argue that because of the settlement, the non-settling defendants' cross-claims against the settling Defendants should be dismissed. or, if the Court finds that viable implied indemnity claims remain, severed from this litigation.

In its most recent ruling on implied indemnity actions, the Supreme Court of Appeals of West Virginia held:

> In a multi-party product liability lawsuit, a good faith settlement between the plaintiff(s) and the manufacturing defendant who is responsible for the defective product will not extinguish the right of a non-settling defendant to seek implied indemnification when the liability of the non-settling defendant is predicated not on its own independent fault or negligence, but on a theory of strict liability.

*Dunn*, 194 W.Va. at ——, 459 S.E.2d at 158. PKV and KV contend this ruling is narrowly restricted to product liability actions and is, therefore, inapplicable to the instant action. If *Dunn* limits implied indemnity claims to product liability actions, then the non-settling Defendants would not have the right to pursue their indemnity claim against the PKV and KV, and the non-settling defendants' cross claims would be extinguished. Although the Court believes *Dunn* applies beyond the product liability context, it need not reach that issue.

*Dunn* is emphatic in its holding that implied indemnification is a remedy available only to non-settling parties against settling parties when the non-settling parties are subject to strict liability. Thus, Defendants Thaxton, Carpenter, D & D, and Price, the non-settling defendants, may pursue an implied indemnity claim against PKV and KV only if the non-settling defendants' potential liability to Plaintiff CSX arose from a theory of strict liability.

CSX's claim is based in part on West Virginia oil and gas regulations. The memoranda submitted by the parties are not models of clarity and perspicuity as to the causes of action, if any, which are authorized by the regulations. CSX and Thaxton, *et al.* seem unwilling to commit to unambiguous positions on the status of the regulations. Although a finding that the regulations create a strict liability cause of action would work against the interests of Thaxton, *et al.* ultimately, more immediately it would satisfy an essential *Dunn* criterion, without which their cross-claims against the settling Defendants would be extinguished. CSX, although it does not state directly whether it believes the regulations imply a strict liability cause of action, argues: "Since the contractor's breach of duty is established by the fact of injury, it can be said that the duty is absolute;" (Plaintiff's Mem. Supp. Motion to Sever at 4).

The West Virginia Court has drawn a complex set of distinctions among strict liability in product liability cases, strict liability in non product liability actions, absolute liability, and general tort liability derived from statutory violations. It has observed strict liability "does not mean that liability is absolute, although the terms 'absolute liability' and 'strict liability' are often used interchangeably." *Peneschi v. National Steel*

*Corp.,* 170 W.Va. 511, 517 n. 4, 295 S.E.2d 1, 7 n. 4 (1982). None of the parties here have wrestled with these distinctions. CSX does not urge that the gas and oil regulations create strict or even absolute liability, but its assertion that Defendants have an "absolute duty" under the regulations points in that direction. Even if it is arguing implicitly for a strict or absolute liability cause of action, CSX provides no authority in support. PKV and KV assert the regulations do not create strict liability.

In its memorandum supporting summary judgment, CSX argues the regulations at issue, West Virginia Code of Statutory Regulations, Title 38, Series 18, "are absolute in prohibiting ... contractors from creating conditions that will allow sedimentation to be carried from the construction site" (Plaintiff's Mem. Supp. Summ. J. at 3). Again CSX does not elaborate on what implications it means to raise from the phrase "absolute in prohibiting." The regulations state:

> 38 W.Va.C.S.R. § 18–5.6. Parties Responsible—All contractors and drillers, including all service companies carrying on business or doing work in oil and gas fields in West Virginia, as well as lease holders and operators generally, shall take notice of and are hereby directed to observe and apply the provisions of W.Va.Code § 22B–1 and this rule; and all contractors, drillers, service companies and operators shall be held responsible for violations thereof. 38 W.Va.C.S.R. § 18–16.3. Drilling sites—Drilling sites shall be constructed and maintained to prevent surface run-off carrying excessive sedimentation from the site, ...

If these regulations create a private cause of action and impose strict liability, then the non-settling defendants would be able to maintain their cross-claims against the settling defendants, according to the teachings of *Dunn, supra.*

Two questions must be answered affirmatively, therefore, before the non-settling Defendants may maintain their cross-claims. Does 38 W.Va.C.S.R. § 18–5.6 create a private cause of action in favor of CSX? If so, does that regulation impose strict liability on a violator? For the reasons that follow, the Court concludes CSX may not assert a private cause of action based on the West Virginia Oil and Gas regulations. It is unnecessary, therefore, for the Court to decide whether the regulation would impose strict liability.

## IMPLIED CAUSES OF ACTION FROM LEGISLATIVE RULES

■ The West Virginia Court has, in accordance with the State Administrative Procedure Act, distinguished between "legislative rules" and "interpretive rules." State administrative agencies must "submit 'legislative rules' to the legislative rule making review committee for the committee's and the full legislature's approval thereof, in order for such rules to be effective." *Chico Dairy Co. v. Human Rights Com'n,* 181 W.Va. 238, 243, 382 S.E.2d 75, 80 (1989) (footnote omitted). An interpretive rule is:

> adopted by an agency independently of any delegation of legislative power which is intended by the agency to provide information or guidance to the public regarding the agency's interpretations, policy, or opinions upon the law enforced or administered by it and which is not intended by the agency to be determinative of any issue affecting private rights, privileges or interests. An interpretive rule may not be relied upon to impose a civil or criminal sanction nor to regulate private conduct or the exercise of private rights or privileges nor to confer any right or privilege provided by law....

W.Va.Code, § 29A–1–2(c). A legislative rule, in contrast, is one:

> which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule.

W.Va.Code, § 29A–1–2(d). The regulations at issue here are legislative rules and have, therefore, cleared the legislative hurdles necessary to attain that status. In creating the

stringent legislative rule-making process, the Legislature found:

the delegation of its legislative powers to other departments and agencies of government requires of the Legislature that the rules and regulations of such other departments and agencies, which have the force and effect of law because of their legislative character, should be carefully and extensively reviewed by the Legislature in a manner properly respectful of the separation of powers but in keeping with the legislative force and effect of such rules and regulations.

W.Va.Code, § 29A-1-1.

The West Virginia Court has not established the standards by which private causes of action may be implied from legislative rules. Because the Legislature intended its legislative rules to have the force of law and because of the legislative review process, the Court believes the Supreme Court of Appeals would hold private causes of action may be implied from legislative rules to the same extent that such causes of action arise from statutory authorization.

## THE *HURLEY* TEST

██ The West Virginia Court noted "its past acceptance of an implied cause of action is deeply engrained. We are virtually the only jurisdiction that permits a private cause of action for violations of statutes requiring sidewalks to be in good repair." *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 600, 280 S.E.2d 252, 255 (1981).[1] It is with this policy in mind that this Court applies the following test, adopted by the state Supreme Court, to determine when a statute gives rise by implication to a private cause of action:

(1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purpose of the legislative scheme; (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 268, 262 S.E.2d 757, 758 (1980). Because of the legislative character of the West Virginia oil and gas regulations, this Court will apply the *Hurley* test in the instant action although Plaintiff's claim rests on a legislative rule rather than on a statute.[2]

██ A private cause of action may not be implied from the regulation at issue according to the *Hurley* criteria because CSX is not

---

**1.** The West Virginia court has observed the Legislature also recognizes the general principle that the violation of a statute could give rise to a private cause of action. *Jenkins*, 280 S.E.2d at 254. *West Virginia Code*, § 55-7-9, provides:

Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.

The statute at issue meets these requirements because, although it provides for a civil penalty of up to two thousand five hundred dollars for each offense, W.Va.Code, § 22-6-34, the statute also states it "shall not preclude any person from seeking other remedies allowed by law." W.Va. Code, § 22-7-8.

**2.** Federal courts have written extensively on when to allow an implied right of action arising from a statute; the *Hurley* test essentially is derived from United States Supreme Court decisions, particularly *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Federal courts, like West Virginia courts, have had scant opportunity, however, to consider whether to imply a private right of action from a regulation rather than from a statute directly.

The Court of Appeals for the Third Circuit has developed a two part inquiry for deciding whether to imply a private right of action from an agency rule. First, a court is to determine whether the statute under which the rule was promulgated permits a private right of action. That determination is made according to the *Cort v. Ash* test. Secondly, if the enabling statute permits a private right of action, the court is directed to focus on "whether granting private parties the ability to bring suit under the rule will further the substantive purposes of the enabling statute." *Angelastro v. Prudential Bache Securities Inc.*, 764 F.2d 939, 947 (3d Cir.1985). This Court need not analyze the instant action according to the second part of the *Angelastro* framework because it concludes the West Virginia Environmental Resources statute does not, in this case, meet the *Cort v. Ash* test for permitting a private cause of action.

a member of the class for whose benefit the statute was enacted. This case was precipitated by two landslides in which spoil from the construction of a gas drilling site allegedly slid onto CSX's mainline tracks. Defendants were involved in excavation and blasting work on well sites and roadways above CSX's tracks. CSX argues Defendants are liable for damages that resulted from the slides because they "were made directly responsible for the violation of the directives" of the oil and gas regulations. (Plaintiff's Motion Summ. J. at 2).

Because regulations can be no more encompassing than the statute from which they are promulgated, CSX may maintain a cause of action under the gas and oil regulations only if the enabling statute defines the class of intended beneficiaries to include persons alike to CSX. *West Virginia Code* § 22–7–1(d), a sub-section of the Oil and Gas Production Damage Compensation statute, narrowly qualifies the class of intended beneficiaries: "It is the purpose of this article to provide constitutionally permissible protection and compensation to surface owners of lands on which oil and gas wells are drilled...." At best, CSX is an adjacent landowner, but not an owner of the land on which the gas well was drilled. It is not a described beneficiary of the statute.

 Because CSX is not a member of the class for whose benefit the statute was enacted, it may not maintain a cause of action based on the oil and gas regulations.[3] CSX is not authorized to bring a strict liability cause of action against the non-settling Defendant. Thus, the *Dunn* requirement that the liability of a non-settling defendant in an implied indemnity action be predicated on a theory of strict liability is not met. Accordingly, Defendants Thaxton, *et al.*, do not have the right to pursue an implied indemnity claim. Because of their prior settlement with CSX, PKV and KV are **DISMISSED** with prejudice from the action.

**3.** The fact that CSX may not pursue a cause of action based on the regulations at issue does not preclude it from maintaining its common law causes of action against Thaxton, *et al. West Virginia Code* § 22–7–8 states the "remedies provided by this article shall not preclude any person from seeking other remedies allowed by

## SUMMARY JUDGMENT

The standard used to determine whether a motion for summary judgment should be granted or denied has been stated by our Court of Appeals as follows:

A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* — U.S. —, —, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994). After consid-

law." " 'Person' means any natural person, corporation, ..." W.Va.Code § 22–7–2(a)(4). Among the common law causes noted by the parties are negligence and maintenance of a nuisance. *See Oresta v. Romano Brothers* 137 W.Va. 633, 73 S.E.2d 622 (1952).

ering the parties memoranda in support of their motions for summary judgment, the Court finds there are issues of material fact extant. Accordingly, the Court **DENIES** all pending motions for summary judgment.