# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**SCHOOLHOUSE LIMITED LIABILITY COMPANY,**
a West Virginia limited liability company,
**Defendant Below, Petitioner**

vs)  **No. 13-0812** (Pocahontas County 12-C-33(R))

**Creekside Owners Association, a West Virginia**
**not-for-profit homeowners association, individually**
**and on behalf of two (2) or more unit owners,**
**Plaintiff Below, Respondent**

**and**

**WIL-KEN, INC., a West Virginia Corporation;**
**BUILDERS GROUP, INC., a West Virginia corporation;**
**BG Millwork, Inc., a West Virginia Corporation;**
**SMITH BACKHOE AND DOZER SERVICE, LLC,**
**a West Virginia limited liability corporation;**
**R.E.H., INC., a West Virginia corporation;**
**DAVIS ELECTRICAL SERVICE, INC., a West Virginia**
**corporation; COOPER ASPHALT, INC., a West Virginia**
**corporation; RELIABLE ROOFING COMPANY, a West**
**Virginia corporation; D'JERICHO, LLC, a West Virginia**
**limited liability company; OLD SPRUCE REALTY**
**AT SNOWSHOE, LLC, a/k/a Remax Old Spruce**
**Properties, a West Virginia limited liability company,**
**Defendants Below, Respondents**

**FILED**

**May 8, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner (defendant below), Schoolhouse Limited Liability Company ("Schoolhouse"), appeals from the August 13, 2013, revised order of the Circuit Court of Pocahontas County approving a mediation settlement reached between the respondent (plaintiff below), Creekside Owners Association ("Creekside"), and the remaining

1

respondents (defendants below).[1] The circuit court found that the settlement had been made in good faith and dismissed all claims against the settling defendants, including the cross-claim of the non-settling Schoolhouse for implied indemnification against the settling defendants. On appeal, Schoolhouse does not assert that the settlement was not made in good faith, but it does challenge the circuit court's dismissal of its implied indemnity cross-claim.

Upon our review of the parties' arguments, the pertinent authorities, and because we find no prejudicial error upon consideration of the applicable standard of review and the appendix record presented, this matter is proper for disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Facts

On August 28, 2012, Creekside filed an Amended Complaint against Schoolhouse, the developer and declarant[2] of Creekside Villas, a condominium complex made up of common elements, limited common elements, and condominium units located at Snowshoe Mountain, Pocahontas County, West Virginia. Also named as defendants were Wil-Ken, Inc. ("Wil-Ken"), the general contractor for the project, D'Jericho, LLC ("D'Jericho"), the architect for the project, and Old Spruce Realty at Snowshoe, LLC, a/k/a ReMax Old Spruce Properties ("Old Spruce Realty"), the realtor that marketed the project to prospective buyers, as well as the various subcontractors and/or suppliers on the project: Elkins Builders Supply Company, LLC ("Elkins Builders"), Builders Group, Inc. ("Builders Group"), BG Millwork, Inc. ("BG Millwork"), Minighini Construction, LLC ("Minighini Construction"), Smith Backhoe and Dozer Service, LLC ("Smith Backhoe"), R.E.H., Inc. ("R.E.H."), Davis Electrical Service, Inc. ("Davis Electric"), Cooper Asphalt, Inc. ("Cooper Asphalt"), and Southern States Elkins Cooperative, Inc. ("Southern States"). Creekside alleged various claims, including negligence, conspiracy, and breach of warranty in the design, construction, marketing, and sale of the common elements, limited common elements, and/or condominium units by one or more of the defendants to Creekside and to

---

[1]Schoolhouse is represented by lawyers James N. Riley, Debra Tedeschi Varner, Stephen G. Jory, and Allison S. McClure. Creekside and the settling defendants are represented by lawyer Teresa J. Dumire.

[2]"'Declarant' means any person or group of persons acting in concert who: (i) As part of a common promotional plan, offers to dispose of his or its interest in a unit not previously disposed of; or (ii) reserves or succeeds to any special declarant right." W.Va. Code § 36B-1-1-3(12) (2011).

various condominium owners who comprise Creekside. Schoolhouse answered and asserted a cross-claim for implied indemnity and contribution against its co-defendants.[3]

On December 5, 2012, Creekside filed a Second Amended Complaint, which added subcontractors Reliable Roofing Company, Randy King d/b/a/ Mountain Artisan Masonry, and Bruce K. Howell d/b/a BK Construction as defendants in the litigation.

In May 2013, the parties engaged in a multi-day mediation, which resulted in a settlement agreement being reached between plaintiff Creekside and defendants Wil-Ken, D'Jericho, Old Spruce Realty, Builders Group, BG Millwork, Smith Backhoe, R.E.H., Davis Electrical, Cooper Asphalt, and Reliable Roofing (the "settling defendants"). Under the pertinent terms of the settlement, the settling defendants agreed to pay Creekside the sum of $600,000 and, in return, Creekside agreed to dismiss its claims against the settling defendants with prejudice. The settling defendants also agreed to a dismissal with prejudice of the cross-claims asserted amongst themselves. Although Schoolhouse, Southern States, and Mountain Artisan Masonry participated in the mediation, they did not reach a settlement with Creekside.[4]

On May 22, 2013, counsel for Schoolhouse advised all counsel that its cross-claim for implied indemnity against the settling defendants was not extinguished by the settlement. Thereafter, on June 17, 2013, the settling defendants and plaintiff Creekside filed a Joint Motion to Approve Settlement and Dismiss Claims ("joint motion") seeking the circuit court's approval of the mediated settlement and a dismissal of all claims asserted against them, including Schoolhouse's implied indemnity cross-claim; they argued that absent the dismissal of all claims, the settlement would not go forward. Schoolhouse opposed the motion arguing that its cross-claim survived the settlement because the counts

---

[3]The only co-defendant against whom Schoolhouse did not assert a cross-claim is Elkins Builders. Creekside alleges that Elkins Builders may be affiliated in some capacity with Schoolhouse—an allegation that Schoolhouse denies. Elkins Builders was voluntarily dismissed by Creekside.

[4]Additional non-settling defendants are Minighini Construction and BK Construction, neither of whom made an appearance in the action below.

in the Amended Complaint asserted against it were all derivative of the claims asserted against the settling defendants.[5]

Following a hearing on the joint motion, the circuit court entered an amended order on August 13, 2013, approving the settlement and dismissing all claims with prejudice.[6] The circuit court, mindful that the law favors and encourages settlements, found that the good faith settlement extinguished Schoolhouse's implied indemnity cross-claims because the remaining claims against Schoolhouse were based on Schoolhouse's independent conduct—not that of the settling defendants. The circuit court concluded that "it [was] [] not necessary for [it] [] to disapprove of the settlement agreement to allow Schoolhouse to prove they are blameless." The circuit court explained that Creekside's claims against Schoolhouse

> are not derivative of the work performed by the Settling Defendants. . . . [and are not] predicated upon imputed, strict or vicarious liability of Schoolhouse for the actions or omissions of the Settling Defendants. Therefore, Schoolhouse's potential liability, if any, must necessarily be predicated upon its own fault. As a result, this Court finds no legal basis to support Schoolhouse's position that its cross-claims for implied indemnity could

---

[5]The respondents state in their brief that Creekside has six causes of action against Schoolhouse that are separate from the causes of action against the settling defendants: Count I (breach of contract); Count II (breach of implied warranty of quality); Count III (breach of express warranty); Count IV (negligent development); Count IX (fraud and misrepresentation); and Count X (negligent misrepresentation). Counts III, IX, and X are also asserted against Old Spruce Realty. Creekside does not reference the counts that were asserted against Schoolhouse, Elkins Builders, Wil-Ken, and Old Spruce Realty (Count VIII (statutory affiliate liability), Count XI (civil conspiracy), and Count XII (joint venture)). These counts were arguably extinguished by Creekside's settlement with Elkins Builders, Wil-Ken, and Old Spruce Realty. Another count not specifically referenced by the respondents is Count XIII (breach of obligation of good faith), which was asserted against all defendants, including Schoolhouse.

[6]The circuit court's first order granting the joint motion was entered on July 10, 2013. The amended order is identical to the earlier July 10th order with the exception that language was added rendering the judgment final and appealable to this Court in accordance with Rule 54(b) of the West Virginia Rules of Civil Procedure. Both orders reflect that excepted from the settlement and the dismissal were certain claims against Old Spruce Realty, including Schoolhouse's cross-claim, to the extent those claims might be covered under an errors and omissions insurance policy.

4

remain active after [Creekside] dismisses all of its claims against, and relating to work performed by, the Settling Defendants.

On August 20, 2013, the circuit court entered Plaintiff's Stipulation of Dismissal of All Claims of Vicarious Liability for Work Performed by or Products Supplied by the Settling Defendants and Order Approving Said Dismissal ("Stipulation/Order").[7] This Stipulation/Order, which effectively closed the door on any possibility that allegations of vicarious liability remained against Schoolhouse, provides that "Plaintiff hereby stipulates to the dismissal, with prejudice, [of] any and all claims for vicarious liability for work performed by or products supplied by the Settling Defendants that it made or could have made against any remaining party Defendant." The Stipulation/Order concludes that "all claims for vicarious liability for work performed by or products supplied by the Settling Defendants that have been or could have been made by the Plaintiff against any Defendant in this case are hereby **DISMISSED WITH PREJUDICE**." This appeal followed.

## II. Standard of Review

Schoolhouse appeals the circuit court's order dismissing its cross-claim for implied indemnity against the settling defendants. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). In light of our *de novo* standard of review, we also consider the standard that was applied by the circuit court:

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

---

[7]The Stipulation/Order reflects that Creekside and the settling defendants consummated their settlement following its approval by the circuit court and that their Settlement Agreement and Release includes

> Plaintiff's release of any and all other entities to the extent, if any, that they are, or may be deemed to be, vicariously liable for the work performed or products supplied by the Settling Defendants insofar as those entities may have contractual and/or implied indemnification claims against the Settling Defendants.

Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). Under these applicable standards, we proceed to address the parties' arguments.[8]

## III. Discussion

Schoolhouse argues that the allegations in its cross-claim were sufficient to meet the dismissal standard under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure because it denied any wrongdoing and asserted that any damages suffered by Creekside were the result of the wrongful conduct of others. According to Schoolhouse, all claims asserted against it in the Amended Complaint are derivative[9] of the claims asserted against the settling defendants; thus, its cross-claims for implied indemnity should survive the settlement. In other words, Schoolhouse contends that the negligent acts of the settling defendants are the factual predicate for all claims asserted by Creekside.

Conversely, the respondents argue that allowing Schoolhouse to maintain its cross-claim for implied indemnity would serve no purpose other than to prejudice the settling defendants who have bought their peace in this litigation.[10] The respondents assert that

---

[8]Schoolhouse also argues that the circuit court erred when it recited factual allegations outside the pleadings in support of its finding that the counts against Schoolhouse in the Amended Complaint are independent claims. While the appendix record does not contain a transcript of the hearing on the joint motion, the circuit court's order reflects that the allegations that Schoolhouse selected roofing materials and directed asphalt thickness were arguments made by Creekside's counsel to illustrate the independent nature of the claims against Schoolhouse. Even if these factual allegations could convert the circuit court's dismissal order to one of summary judgment, our standard of review would be the same—*de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

[9]"[T]he Court has clearly acknowledged the fact that there is a technical difference between joint tortfeasors and those whose liability is derivative or vicarious[.]" *Woodrum v. Johnson*, 210 W.Va. 762, 768, 559 S.E.2d 908, 914 (2001).

[10]          As this Court has consistently made clear in the past, "'[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]'" Syl. pt. 6, in part, *DeVane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999) (quoting syl. pt. 1, *Sanders v.*

(continued...)

Schoolhouse's potential liability is not predicated upon product liability or strict liability, but on its own misrepresentations, fraud, and breach of its separate duty of care as the developer/declarant of the Creekside Villas condominium complex. Because Creekside has dismissed with prejudice any and all vicarious liability claims arising out of the work of the settling defendants, and because Creekside's claims asserted against Schoolhouse are independent causes of action,[11] the respondents maintain that Schoolhouse cannot succeed on its implied indemnity cross-claim. In short, the respondents argue that if Schoolhouse is found to be liable to Creekside, it cannot assert an implied indemnity claim because such claims can only be asserted by a fault-free party and, if Schoolhouse is found to be faultless, there would be nothing for the settling defendants to indemnify because Schoolhouse will not be obligated to pay any damages. We agree.

Schoolhouse has conceded that its cross-claim for contribution against the settling defendants was extinguished by the settlement. *See* Syl. Pt. 6, *Bd. of Educ. v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990) ("A party in a civil action

[10](...continued)
> *Roselawn Mem'l Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968)); *see also Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 604, 390 S.E.2d 796, 803 (1990); *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984); *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979); *Janney v. Virginian Ry. Co.*, 119 W.Va. 249, 193 S.E. 187 (1937).

*Woodrum v. Johnson*, 210 W.Va. 762, 771, 559 S.E.2d 908, 917; *see also,* Syl. Pt. 1, in part, *Sanders v. Roselawn Mem. Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968) ("The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]"); *Horace Mann Ins. Co. v. Adkins*, 215 W.Va. 297, 303, 599 S.E.2d 720, 726 (2004) ("As a means of promoting judicial economy and facilitating the resolution of contested cases, we long have noted that settlements are favored under the laws of this State."); *Certain Underwriters v. Pinnoak Resources, LLC*, 223 W.Va. 336, 345, 674 S.E.2d 197, 206 (2008) ("Courts should favor and encourage settlement agreements.").

[11]The respondents assert that if Schoolhouse is correct in its assertion that Creekside's claims against it are not independent claims, Schoolhouse can seek summary judgment in the circuit court. Schoolhouse suggested the possibility of such a dispositive motion in its reply brief.

who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution."). While contribution is a mechanism through which joint tortfeasors can seek to recover from one another for sums paid to an injured party that exceeds their own percentage of fault, "[i]mplied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity." Syl. Pt. 2, *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982). We previously established the elements of an implied indemnity claim, as follows:

> (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share.

Syl. Pt. 4, in part, *Harvest Capital v. W.Va. Dep't of Energy*, 211 W.Va. 34, 560 S.E.2d 509 (2002).

In addressing implied indemnity in the context of settlements in multiparty litigation, we held in syllabus point six of *Dunn v. Kanawha County Board of Education*, 194 W.Va. 40, 459 S.E.2d 151 (1995), that

> [i]n a multiparty product liability lawsuit, a good faith settlement between the plaintiff(s) and the manufacturing defendant who is responsible for the defective product will not extinguish the right of a non-settling defendant to seek implied indemnification when the liability of the non-settling defendant is predicated not on its own independent fault or negligence, but on a theory of strict liability.

We later expanded upon our holding in *Dunn* to non-product liability actions. In *Hager v. Marshall*, 202 W.Va. 577, 505 S.E.2d 640 (1998), we held that "[i]n non-product liability multi-party civil actions, a good faith settlement between a plaintiff and a defendant will extinguish the right of a non-settling defendant to seek implied indemnity unless such non-settling defendant is without fault." *Id.* at 580-81, 505 S.E.2d at 643-44, syl. pt. 7.[12]

---

[12]Both Schoolhouse and the respondents rely upon *Hager* for their respective positions. In *Hager*, independent causes of action were asserted against a non-settling defendant, in additional to vicarious claims, which exposed the non-settling defendant to

(continued...)

Subsequently, we cited our holding in *Hager* and explained that "a vicariously liable defendant's right to implied indemnity is not affected by settlement between a plaintiff and other liable parties." *Woodrum v. Johnson*, 210 W.Va. 762, 769, 559 S.E.2d 908, 915 (2001) (citing Syl. Pt. 7, *Hager*, 202 W.Va. at 580-81, 505 S.E.2d at 643-44).

In the case at bar, as the respondents argue and as the circuit court found, the Amended Complaint does not assert any claims against Schoolhouse predicated upon imputed, strict, or vicarious liability of Schoolhouse for the actions or omission of the settling defendants. The circuit court concluded that

> [the] settlement agreement and competing claims for implied indemnity are unique, in that the settlement agreement extinguishes any claim for which the putative indemnitors could be held liable. The claims that would survive this Court's approval of the parties' settlement agreement allege independent conduct by the respective non-settling defendants. As such, any verdict rendered on the remaining claims cannot be attributed to the Settling Defendants . . . .

Moreover, the circuit court found "no legal basis to support Schoolhouse's position that its cross-claims for implied indemnity could remain active after [Creekside] dismisses all of its claims against, and relating to work performed by, the Settling Defendants." Thereafter, any lingering question in this regard was answered in the Stipulation/Order that dismissed with prejudice any and all vicarious claims.[13] Thus, in this instance, the respondents' good faith settlement does, in fact, extinguish Schoolhouse's implied indemnity cross-claim. Indeed, even if we were to assume, *arguendo*, that

---

[12](...continued)
potential liability even if it were found to be without fault. *Hager*, 202 W.Va. 577, 505 S.E.2d 640.

[13]In addition, the Settlement Agreement and Release specifically provides that Creekside "further releases any and all other entities to the extent, if any, that they are, or may be deemed to be, vicariously liable for the work performed or products supplied by the Settling Defendants insofar as those entities may have contractual and/or implied indemnification claims against the Settling Defendants."

9

Schoolhouse is correct and that the claims asserted against it allege vicarious liability,[14] such claims are nonexistent.

As it currently stands, if Schoolhouse is found to be at fault for its own actions, inaction, or conduct under the independent theories of liability that have been asserted against it, Schoolhouse would not be able to seek implied indemnity as it would not be fault-free. Conversely, if Schoolhouse is found to be without fault, there would be nothing to indemnify as it will not be made to pay damages on either the independent claims asserted against it, or on any "claims for vicarious liability for work performed by or products supplied by the Settling Defendants that Creekside made or could have made against any remaining party Defendant[,]"[15] which have been dismissed. Consequently, we conclude that the circuit court correctly found that there is "no legal basis to support Schoolhouse's position that its cross-claims for implied indemnity could remain active after the Plaintiff dismisses all of its claims against, and relating to work performed by, the Settling Defendants."[16]

---

[14]The mere fact that Creekside's claims arise out of the same set of underlying facts does not make the claims asserted against Schoolhouse vicarious. *Cf. St. Paul Fire & Marine Ins. v. Hanover Ins.*, 187 F.Supp.2d 584, 594 n.12 (E.D.N.C. 2000) (applying North Carolina law and observing that "a general contractor's liability for the torts of its sub-contractor is direct and not vicarious. As a practical matter, a finding that a subcontractor is liable for negligence may be accompanied by a finding that a general contractor negligently breached its own duty to ensure that the subcontractor took appropriate precautionary measures. However, the subcontractor's negligence in such a situation is not imputed to the general contractor. Rather, the subcontractor's negligence is simply evidence of the general contractor's breach of its own duty."). Here, Creekside's claims against Schoolhouse are based on Schoolhouse's independent responsibilities and duties as the developer/declarant of the Creekside Villas condominium complex.

[15]*See Stipulation/Order*, *supra*.

[16]Creekside has greatly narrowed the scope of its action through both its settlement agreement and its stipulated dismissal with prejudice of any and all vicarious claims arising out of the work performed by or products supplied by the settling defendants that it made or could have made against any remaining defendant. Consequently, if Creekside were to violate the reduction in scope it has established for itself as this matter proceeds below, Schoolhouse can address that situation in the first instance in the circuit court.

For the foregoing reasons, we find that under the facts and circumstances of this case, the circuit court did not err in dismissing Schoolhouse's cross-claim for implied indemnity against the settling defendants.

Affirmed.

**ISSUED:** May 8, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

11